IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re:<br><br>**Wallace Howard Shields &**<br>**Deborah Jo Shields,**<br><br>**Debtors.** | Case No. 17-30321<br><br>Chapter 13 |

**MEMORANDUM OPINION**

The court must determine whether Debtors Wallace and Deborah Shields may exempt under Mo. Rev. Stat. § 513.430.1(10)(e) (2016) ("(10)(e)") some or all of the payments Wallace receives from his former employer Southwest Missouri Bank ("SMB") pursuant to a Supplemental Executive Retirement Plan ("SERP"). Because the Shieldses still owe SMB on three loans, the court must also determine whether SMB has a right of setoff that it may enforce against any portion of the SERP payments.

For the reasons set forth below, the court determines that a portion of each SERP payment is exempt and that SMB has a common law right of setoff that it may exercise in the non-exempt portion of each SERP payment.

    **I.**    **Jurisdiction**

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b) (2012). This matter is statutorily and constitutionally core under 28 U.S.C. § 157(b)(2)(B). The court, therefore, has the authority to hear this matter and make a final determination. No party has contested jurisdiction or the court's authority to make final determinations.

**II.     Burden of Proof**

As the party objecting to the exemption, SMB bears the burden of proving the Shieldses did not properly claim the SERP payments as exempt under (10)(e).  Fed. R. Bankr. P. 4003(c).  SMB also bears the burden of proving it has a valid and enforceable right of setoff against the SERP payments.  *Pester Ref. Co. v. Mapco Gas Prods., Inc. (In re Pester Ref. Co.)*, 845 F.2d 1476, 1486 (8th Cir. 1988).

**III.    Factual Background**

The relevant facts are undisputed.  Wallace worked for SMB when the two entered into the SERP in December 2008.  Pursuant to the SERP, Wallace deferred until retirement some of the compensation he earned while working for SMB.  The SERP required Wallace to work for SMB for a specified number of years and reach one of several specified retirement ages to receive deferred compensation payments.  Wallace retired from SMB prior to filing bankruptcy, and SMB began making the SERP payments to Wallace.  According to the Shieldses' Schedule I and Wallace's testimony, Wallace receives $2,285.06 each month under the SERP.  SMB is obligated to make the SERP payments to Wallace until August 2027.  In their amended Schedule C, the Shieldses claim that the SERP payments are entirely exempt under (10)(e).

SMB made three loans to Wallace and Deborah before they filed bankruptcy.  One loan is secured by the Shieldses' home and is not at issue in this matter.  SMB filed a proof of secured claim for each of the other two loans and a motion for relief from stay seeking permission to exercise its right of setoff against the SERP payments it owes Wallace.  The Shieldses objected to those claims arguing the SERP payments are exempt under (10)(e).  SMB objected to the Shieldses' claimed exemption arguing that the SERP payments are not exempt under (10)(e).  In its trial brief, SMB contends that it has the right to offset the SERP payments it owes Wallace

against the two loans that are not secured by the home until those two loans are satisfied. The aggregate amount SMB owes Wallace in SERP payments exceeds the amount Wallace and Deborah owe SMB on those two loans.

The parties submitted briefs and exhibits on whether the SERP payments are exempt under (10)(e) and whether SMB has a valid and enforceable right of setoff. On October 26, 2017, the court heard the parties' oral arguments, and Wallace testified. After taking this matter under advisement, the court is ready to rule.

### IV. A Portion of Each SERP Payment is Exempt Under Mo. Rev. Stat. § 513.430.1(10)(e)

Qualified deferred compensation plans are exempt under Mo. Rev. Stat. § 513.430.1(10)(f) (2016).[1] But the SERP is a nonqualified deferred compensation plan under Internal Revenue Code § 409A, 26 U.S.C. § 409A (2012), and, consequently, is not specifically exempt under § 513.430(10)(f). So, the court must analyze the SERP under (10)(e)[2] to determine whether any portion of it is exempt.

---

[1] Mo. Rev. Stat. § 513.430.1(10)(f) (2016) exempts "Any money or assets, payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan, profit-sharing plan, health savings plan, or similar plan, including an inherited account or plan, that is qualified under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended, whether such participant's or beneficiary's interest arises by inheritance, designation, appointment, or otherwise, except as provided in this paragraph."

[2] Mo. Rev. Stat. § 513.430.1(10)(e) (2016):
Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, nonpublic retirement plan or any plan described, defined, or established pursuant to section 456.014 [exempting spendthrift trusts], the person's right to a participant account in any deferred compensation program offered by the state of Missouri or any of its political subdivisions, or annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:
    a. Such plan or contract was established by or under the auspices of an insider that employed such person at the time such person's rights under such plan or contract arose;
    b. Such payment is on account of age or length of service; and
    c. Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, 408A or 409 of the Internal Revenue Code of 1986, as amended, (26 U.S.C. [§§] 401(a), 403(a), 403(b), 408, 408A or 409);
except that any such payment to any person shall be subject to attachment or execution pursuant to a qualified domestic relations order, as defined by Section 414(p) of the Internal Revenue Code of 1986, as amended,

3

In analyzing whether the SERP payments are exempt under (10)(e), the court will look to cases interpreting (10)(e)'s federal exemption counterpart found in 11 U.S.C. § 522(d)(10)(E) because no court has addressed whether a SERP or 409A plan is exempt under (10)(e). The court is aware that two other bankruptcy courts have addressed whether a SERP or other 409A plan is exempt in Illinois and Virginia. *See In re Jokiel*, 453 B.R. 743 (Bankr. N.D. Ill. 2011) (concluding that SERP did not qualify for exemption under Illinois law); *In re Gnadt*, 2015 WL 2194475 (Bankr. E.D. Va. May 7, 2015) (concluding that 409A plan did not qualify for exemption under Virginia law). The requirements under the Illinois and Virginia exemption statutes, however, differ from (10)(e)'s requirements; so, those cases are not helpful here. Although there are no cases applying (10)(e) to a SERP and there is a dearth of case law guidance on SERP exemptions in general, the court finds guidance from cases interpreting § 522(d)(10)(E) because "[t]he Missouri exemption provision [found in (10)(e)] is virtually identical to that found in [§ 522(d)(10)(E)]." *Checkett v. Vickers (In re Vickers)*, 954 F.2d 1426, 1429 (8th Cir. 1992). The court will now determine whether the SERP payments are exempt under (10)(e).

Missouri's (10)(e) exempts payments from certain deferred compensation programs to the extent the payments are reasonably necessary for the support of a debtor and his or her dependents. Determining whether the SERP is exempt under (10)(e) requires two analytical steps. First, the SERP does not qualify for exemption under (10)(e) if:

(1) The plan or contract was established "by or under the auspices of an insider that employed [the debtor] at the time [the debtor's] rights arose" under the plan;

(2) The payment is made "on account of age or length of service"; and

---

issued by a court in any proceeding for dissolution of marriage or legal separation or a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of marital property at the time of the original judgment of dissolution.

4

>    (3) The plan or contract does not qualify under Internal Revenue Code §§ 401(a), 403(a), 403(b), 408, 408A or 409.

Mo. Rev. Stat. § 513.430.1(10)(e). If the SERP meets all three of these disqualifying criteria, then the Shieldses may not exempt any portion of the SERP payments. *In re Miller*, 33 B.R. 549, 551–52 (Bankr. D. Minn. 1983) (interpreting § 522(d)(10)(E) and concluding that all three criteria must be met to except pension plan from exemptability).

The SERP does not meet the first disqualifying criterion. The parties agreed at the hearing that SMB was not Wallace's insider when his rights arose under the SERP. Because it does not meet the first disqualifying criterion, the SERP is not disqualified from exemption under (10)(e), and the court may proceed to the second step of the (10)(e) analysis.

If a deferred compensation plan is not disqualified from the (10)(e) exemption, a debtor may exempt payments under that plan:

>    (1) if the right to receive payment is from "a stock bonus, pension plan, disability or death benefit plan, profit-sharing plan . . . or annuity, or similar plan or contract";
>
>    (2) if the right to receive payment is "on account of illness, disability, death, age, or length of service"; and
>
>    (3) "to the extent" the payments are "reasonably necessary [for the] support" of the debtor and his or her dependents.

*Rousey v. Jacoway*, 544 U.S. 320, 325–26 (2005) (interpreting § 522(d)(10)(E)). The court analyzes each requirement separately below.

### A. "Similar plan or contract"

If a nonqualified deferred compensation plan is not a stock bonus plan, pension plan, profit-sharing plan, or annuity, the plan must share common characteristics with those plans to be exempt. *Id.* at 329. Because the SERP is not any of those plans, the court must determine whether the SERP is a sufficiently similar plan or contract. Generally, a plan is a similar plan or contract if the

plan's payments function as a substitute for wages. *Id.* at 330–31. Other courts have interpreted this requirement broadly and commented that non-qualified deferred compensation plans are exempt. *See, e.g.*, *In re Threewit*, 24 B.R. 927, 930 (D. Kan. 1982) (addressing § 522(d)(10)(E) and stating that it "exempts the right to receive payments necessary for support from a wide range of sources, *tax-qualified or not*, including, for example, Christmas stock bonuses paid upon 25 years of service, or profit-sharing restricted to senior employees, or an annuity purchased to provide income to a worker disabled in an industrial accident." (emphasis original)). The SERP payments to Wallace represent compensation that Wallace deferred into retirement and clearly function as a substitute for wages during Wallace's retirement years. The court, therefore, concludes that the SERP is a deferred compensation plan similar to the plans and contracts enumerated in (10)(e).

### B. "On account of Illness, Disability, Death, Age, or Length of Service"

The second element, "on account of illness, disability, death, age, or length of service," means the employee/debtor receives payments from the deferred compensation plan "because of [an employee/debtor's] illness, disability, death, age, or length of service." *Rousey*, 544 U.S. at 326–27. The SERP required Wallace to work for SMB for a specified number of years and reach one of the several specified retirement ages before becoming eligible to receive the SERP payments. Wallace presumably met those age and service requirements because SMB began making SERP payments to Wallace prepetition. SMB does not suggest otherwise and even agreed at the hearing that Wallace receives the SERP payments on account of age or length of service. The SERP satisfies the second requirement because it entitles Wallace to receive payments because of both his age and length of service.

6

### C. Reasonably Necessary

Under the final requirement, a debtor may exempt payments under (10)(e) only to the extent those payments are reasonably necessary for support. For the reasons set forth below, the court concludes that $1,285.06 of each SERP payment is reasonably necessary for the Shieldses' support and, therefore, exempt, but the remaining $1,000 of each SERP payment is not.

Neither the Missouri exemptions statutes nor the Bankruptcy Code sets standards for determining whether payments are reasonably necessary for (10)(e) purposes. As a result, courts must determine whether those payments are reasonably necessary on a case-by-case basis, examining all circumstances surrounding a debtor's present and future needs. *See In re Boykin*, 118 B.R. 716, 718 (Bankr. W.D. Mo. 1990); *In re Kochell*, 732 F.2d 564, 565–66 (7th Cir. 1984). Courts in the Eighth Circuit consider the following eleven *Flygstad* factors to determine whether and to what extent payments are reasonably necessary for a debtor's support:

(1) Debtor's present and anticipated living expenses;
(2) Debtor's present and anticipated income from all sources;
(3) Age of the debtor and dependents;
(4) Health of the debtor and dependents;
(5) Debtor's ability to work and earn a living;
(6) Debtor's job skills, training, and education;
(7) Debtor's other assets, including exempt assets;
(8) Liquidity of other assets;
(9) Debtor's ability to save for retirement;
(10) Special needs of the debtor and dependents; and
(11) Debtor's financial obligations, e.g., alimony or support payments.

*In re Flygstad*, 56 B.R. 884, 889–90 (Bankr. N.D. Iowa 1986); *see also Boykin*, 118 B.R. at 719.

In the following sections, the court concludes that while several of these factors weigh in favor of finding that some portion of each SERP payment is reasonably necessary for the Shieldses' support, some do not.

        1.      *Factors Weighing in Favor of Finding the SERP Payments Reasonably Necessary*

Together, *Flygstad* factors (3) age; (4) health; (5) ability to work and earn a living; (6) job skills, education, and training; (9) ability to save for retirement; and (10) special needs reveal whether a debtor possesses the characteristics necessary to provide for his or her current support and replenish retirement assets for future support. Courts routinely distinguish between young, healthy, and highly trained debtors, on the one hand, and elderly, sick, or retired debtors on the other. The former usually have ample present earning capacity and opportunity to save for retirement, while the latter often cannot work and therefore require retirement income to meet present and future needs. *See, e.g.*, *In re Switzer*, 146 B.R. 1, 5 (Bankr. C.D. Cal. 1992); *In re Smith*, 124 B.R. 787, 791 (Bankr. W.D. Mo. 1991) (distinguishing *In re Gaines,* 106 B.R. 1008, 1020–21 (Bankr. W.D. Mo. 1990)); *In re Donaghy*, 11 B.R. 677 (Bankr. S.D.N.Y. 1981) ("The special needs of retired, elderly, and infirm debtors should be taken into account"). Furthermore, because health care costs inevitably increase with age, retirement income becomes more important as debtors age. *See In re Switzer*, 146 B.R. at 5.

The Shieldses' advanced ages, inability to work and earn a living, lack of present job skills, inability to save for retirement, and special needs weigh in favor of finding at least a portion of each SERP payment exempt as reasonably necessary for their support. Wallace is 71-years-old. Though neither party presented evidence concerning Deborah's age, she has worked as a substitute teacher for 34 years, and so the court concludes her age also limits her earning capacity. Though Wallace once worked as a part-time Avis shuttle driver and Deborah currently works as a substitute teacher, Wallace has ceased work entirely and Deborah is retiring in May 2018. As a result, when both Wallace and Deborah fully retire by May 2018, they will rely entirely on their combined Social Security income and Wallace's SERP payments to pay their expenses. Similarly, while

8

Wallace and Deborah once enjoyed skills sufficient to support themselves as a bank employee and schoolteacher, the court does not presume those skills serve them indefinitely. The court discounts any job skills, education, and training Wallace and Deborah might have because they can no longer apply such skills, education, and training to build or supplement existing retirement funds. The Shieldses no longer have time to save for retirement, and their ability to build or maintain their retirement funds with part-time work has diminished.

These factors reveal that the Shieldses are at the point in their lives when they must rely upon the SERP payments, together with their Social Security income, for their support. The Shieldses, therefore, may exempt at least a portion of the SERP payments as reasonably necessary to support their basic needs. The amount of the exemption, however, turns on the final *Flygstad* factors: the Shieldses' assets and present and anticipated income and expenses.

        2.    *Factors Weighing Against Finding the SERP Payments Reasonably Necessary*

The court considers the remaining relevant *Flygstad* factors—(1) present and anticipated living expenses, (2) present and anticipated income from all sources, (7) other assets, including exempt assets, and (8) asset liquidity—to determine how much supplemental income the Shieldses need to meet their basic needs. Debtors with excess assets and income generally do not reasonably need additional retirement income because excess income allows debtors to save additional sums for retirement. *Compare In re Gaines*, 106 B.R. 1008, 1021 (Bankr. W.D. Mo. 1989) (finding dentist's interests in retirement plans not reasonably necessary), *quashed on other grounds*, *Gaines v. Nelson (In re Gaines)*, 121 B.R. 1015 (W.D. Mo. 1990) *with In re Boykin*, 118 B.R. 716, 719–20 (Bankr. W.D. Mo. 1990) (finding Wal-Mart cashier's interest in retirement funds reasonably necessary). Courts generally exempt amounts reasonably necessary to sustain a debtor's basic

9

needs, but not to support a lifestyle or social status to which a debtor might have become accustomed prior to filing bankruptcy. *In re Taff*, 10 B.R. 101, 107 (Bankr. D. Conn. 1981).

Here, the Shieldses' assets, income, and expenses weigh in favor of finding less than the full amount of each SERP payment exempt. The Shieldses possess substantial assets, many of which they purchased on credit within a short time before filing bankruptcy. For example, according to their schedules and information in proofs of claims filed by several creditors, on the filing date, the Shieldses owned several vehicles, including three motor vehicles with a combined value of more than $43,000 (a 2015 Ford Taurus, a 2015 Ford Fiesta, and a 2016 Ford F-150 pickup, all purchased new less than two years before they filed this Chapter 13 case), one 2014 Georgetown Motor Home purchased new in late 2013 for more than $132,000, two 2017 trailers valued at a combined $3,000, and two 2016 Polaris ATVs valued at $4,000 each. Their Chapter 13 Plan indicates they intend to surrender the motor home and the Polaris ATVs, but they propose to retain both trailers and all three motor vehicles. The Shieldses also own a home worth $138,000. Though their claimed exemption is somewhat supported by *Flygstad* factor eight, the illiquid and encumbered nature of the assets (the vehicles appear to be fully encumbered by Ford Motor Company liens), these substantial assets undermine the Shieldses' claim that they reasonably need all of the SERP payments for support.

Similarly, though the Shieldses' present and anticipated living expenses exceed their present and anticipated income, not all of those expenses are reasonably necessary for their support. As to their income, the Shieldses currently receive $3,172.90 in Social Security income each month. At the time of filing their bankruptcy petition, they each worked part-time. However, Wallace testified each of them will fully retire by May 2018. At that time, they will rely entirely on their combined Social Security income of $3,172.90 per month and the SERP payments.

10

The Shieldses spend their income on approximately $5,700 in monthly expenses, including three car payments totaling more than $1,060 each month. Those current monthly expenses exceed their combined monthly Social Security income ($3,172.70) plus a SERP payment ($2,285) by approximately $250. Because the Shieldses' monthly expenses exceed their monthly income, the court must determine whether those expenses are reasonably necessary for their support.

Many of the Shieldses' expenses are reasonable and necessary for their support. For example, they spend reasonable amounts on their home mortgage payment, home ownership expenses, and utility expenses. However, some of their other expenses are excessive. In particular, the Shieldses could reduce the following monthly expenses: $750 for food and housekeeping supplies, $500 for transportation (fuel and vehicle maintenance), $600 for charitable contributions and religious donations, and $1,060 for three motor vehicle installment payments. *See, e.g.*, *In re Schlee*, 60 B.R. 524, 529 (Bankr. D. Minn. 1986); *In re Parker*, 219 B.R. 972, 975 (S.D. Ohio 1998) (suggesting debtors reduce charitable contributions, if necessary); *In re Switzer*, 146 B.R. 1, 6 (Bankr. C.D. Cal. 1992) (reducing transportation costs). It is unclear to the court under what circumstances a retired couple in Chapter 13 needs to own and maintain three relatively new vehicles for their support. Under their current circumstances, it is unreasonable for the Shieldses to include the monthly loan payments on all three of those vehicles in calculating the extent to which the SERP payments are reasonably necessary. They can and should further reduce their expenses by surrendering or selling one or more of their vehicles.

Though the court does not purport to specify by what amount the Shieldses must reduce each unnecessary or excessive monthly expense, it encourages them to reduce those expenses from the amounts listed to levels that are truly necessary to support their basic needs. Because the Shieldses may, and should, reduce their expenses, the court concludes that only $1,285.06 of each

11

SERP payment is reasonably necessary for the Shieldses' support. This amount, when combined with their Social Security income, should adequately serve their basic needs. The remaining $1,000 is not exempt under (10)(e). Having determined that the Shieldses may exempt $1,285.06 of each SERP payment, the court next considers whether SMB has a valid right of setoff that it may exercise against any portion of each SERP payment.

### V.    SMB's Right of Setoff

Generally, Bankruptcy Code § 553(a) preserves a creditor's right to "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a) (2012). However, the Bankruptcy Code does not create a right of setoff. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *U.S. v. Krause (In re Krause)*, 261 B.R. 218, 222 (B.A.P. 8th Cir. 2001). Instead, a right of setoff must stem from some non-bankruptcy source.

Possible sources of a party's right of setoff include federal and state statutes, contractual provisions granting and addressing the scope of setoff rights, and common law. 5 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*, ¶ 553.04[1]–[3] at 553–56 to –60 (16th ed. 2017). Here, SMB has not cited any statute granting it the right of setoff. Rather, SMB argues it has a common law right to offset the SERP payments against the two loans. SMB also argued that it has a contractual right of setoff with respect to the loan evidenced by Claim 4-2. But SMB's contractual right of setoff only becomes enforceable after default and notice, and SMB's counsel confirmed at the hearing that the Shieldses were not in default on that loan prior to the petition date and that SMB did not send any notice of default to the Shieldses. Consequently, SMB has no enforceable contractual right of setoff here.

12

A creditor has a common law right of setoff if: (1) it owes a prepetition debt to the debtor; (2) it has a prepetition claim against the debtor; and (3) the debt and claim are mutual obligations. *R.M. Taylor, Inc. v. White (In re R.M. Taylor, Inc.)*, 257 B.R. 289, 294 (Bankr. W.D. Mo. 2000); *see also Greenwood v. Bank of Illmo*, 782 S.W.2d 783, 786 (Mo. Ct. App. 1989) (focusing on mutuality). The parties here appear to agree that SMB has a valid right of setoff under Missouri common law. SMB owes the SERP payments to Wallace, and that obligation arose prepetition. SMB has prepetition claims against the Shieldses for the loans. While the Bankruptcy Code does not define "mutual," mutuality exists if something is "owed by both sides in the same rights and capacity." *In re Lund*, 136 B.R. 237, 238–39 (Bankr. D.N.D. 1990). "The debt need not be the same character and, in fact, the [Bankruptcy] Code itself contemplates debts arising from different transactions." *Id.*; *In re Whitman*, 38 B.R. 395, 397 (Bankr. D.N.D. 1984); *see McDaniel Nat'l Bank v. Bridwell*, 74 F.2d 331, 332 (8th Cir. 1934). SMB's obligation to pay Wallace under the SERP and the Shieldses' obligations to repay the loans are mutual obligations.

Given the above, SMB has a valid common law right to offset the SERP payments against the two loans. SMB may exercise its right of setoff by reducing each monthly SERP payment to Wallace by at least the non-exempt portion, *i.e.*, $1,000. The court, however, must determine whether the exempt portion of each SERP payment is also subject to SMB's right of setoff.

  **VI.** **SMB's Right of Setoff Yields to the Shieldses' Exemption in the SERP Payments**

Courts seem to disagree about whether a debtor's property exemption claim yields to a creditor's valid right of setoff. Some courts prioritize the debtor's "fresh start" and conclude that the exemption prevails over a competing setoff right, while other courts conclude that a creditor's right of setoff prevails because the text of § 553 does not refer to § 522(c) or a right to claim exemptions as an exception to the preservation of a creditor's right to setoff. *See generally U.S.,*

13

*I.R.S. v. White*, 365 B.R. 457 (M.D. Pa. 2007) (summarizing case law adopting each approach and concluding the latter approach is correct).

Whether a debtor's exemption yields to a creditor's right of setoff arises in a variety of factual contexts. Recently, a large majority of the cases addressing this issue have arisen in the context of a debtor who wishes to exempt a federal tax refund but who happens to owe a debt to a governmental entity that seeks to offset that debt against the tax refund. Those cases typically favor the right of setoff over the claim of exemption. Understandably, SMB cites three tax refund cases—*In re Baucom*, 339 B.R. 504, 506–07 (Bankr. W.D. Mo. 2006) (concluding that federal Rural Housing Department could credit or set off claim against debtor's expected federal tax refund), *U.S., I.R.S. v. White*, 365 B.R. 457 (M.D. Pa. 2007), and *In re Bourne*, 262 B.R. 745 (Bankr. E.D. Tenn. 2001)—because those cases seem to support SMB's position that its right of setoff is superior to any exemption in the SERP payments. But under the facts and circumstances of this case, the court disagrees with that outcome and the rationale of automatically elevating a creditor's right of setoff over a debtor's right to an exemption in all cases.

The tax refund cases are distinguishable here because in those cases the federal government enjoyed statutory authority, under the Internal Revenue Code, to reduce government claims from any tax overpayments before the taxpayer was entitled to a refund. As this court noted several years ago, "the IRS's nonbankruptcy right to setoff stems from 26 U.S.C. § 6402 which provides that the IRS may credit overpayments to other liabilities that the taxpayer may owe and *that only after those credits have been applied* do the taxpayers receive a 'refund.'" *In re Pace*, 257 B.R. 918, 919 n.1 (Bankr. W.D. Mo. 2000) (citation omitted) (emphasis added). In other words, a debtor's tax refund claim—and thus the debtor's exemption—is net of any credits authorized under 26 U.S.C. § 6402 (2012). The statutory language of 26 U.S.C. § 6402, which creates the right of

setoff in those cases, is clear. Just as clear is § 553 and its preservation of a creditor's right of setoff that arises under non-bankruptcy law. So, it is easy to understand why the government's setoff rights usually prevail over a debtor's claim of exemption in a tax refund.

Unlike the tax refund cases, SMB does not have a statutory right of setoff that is superior to the (10)(e) exemption. Instead, SMB has a common law right of setoff under Missouri law. The Bankruptcy Code neither enhances nor diminishes that right, except to impose the automatic stay under § 362(a)(7) to delay its exercise. This court already recognized in the non-tax refund context that even if a creditor has a valid "right of setoff against nonexempt property of the debtors, it has no right to set off its debt against exempt assets" under Missouri law. *In re Arnold*, 193 B.R. 897, 899 (Bankr. W.D. Mo. 1996) (citing *State of Missouri to the Use of John Codding v. Finn*, 8 Mo. App. 261, 264–65 (Mo. Ct. App. 1880)).

Cases in other jurisdictions agree in the non-tax refund context that a creditor's right of setoff yields to the debtor's exemption. *See, e.g.*, *In re Cole*, 104 B.R. 736 (Bankr. D. Md. 1989) (concluding that utility company may not set off prepetition utility claim against utility deposit the debtor claimed as exempt); *In re Wilde*, 85 B.R. 147, 148–49 (Bankr. D.N.M. 1988) (concluding that bank may not exercise right of setoff against exempt account balance); and *In re Terry*, 7 B.R. 880, 882–83 (Bankr. E.D. Va. 1980) (concluding that former employer's right to set off loan balance against unpaid wages was limited to the non-exempt portion of those wages).

Because (1) the Shieldses' exemption arises under Missouri's (10)(e), (2) SMB's right of setoff arises under Missouri common law, and (3) under Missouri law, SMB's right of setoff yields to the exemption, the court concludes that SMB may not exercise its setoff right against the exempt portion of each SERP payment.

15

## VII. Conclusion

For the reasons set forth above, the court concludes that (1) $1,285.06 of each SERP payment to Wallace is exempt under Mo. Rev. Stat. § 513.430.1(10)(e), (2) the remaining $1,000 of each SERP payment is not exempt, (3) SMB may exercise its right of setoff against the non-exempt portion of each SERP payment until the two loans in question are paid in full, (4) but SMB may not exercise its right of setoff against the exempt portion of each SERP payment. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

The court will issue separate orders on the docket consistent with this opinion as follows: The court will sustain the Shieldses' objections to SMB's claims 4-2 and 5-2 [ECF Nos. 45 & 46] in part for the exempt portion of the SERP payments and overrule those objections in part for the non-exempt portion of the SERP payments. The court will sustain SMB's objection to the Shieldses' claimed exemption in the SERP payments [ECF No. 53] in part for the non-exempt portion of the SERP payments and overrule that objection for the exempt portion of the SERP payments. The court will grant SMB's motion for relief from the automatic stay [ECF No. 21] only to the extent necessary to allow SMB to set off the non-exempt portion of the SERP payments and deny that motion as to the exempt portion of the SERP payments. The court will also issue a separate order overruling SMB's objection to the Shieldses' Chapter 13 plan [ECF No. 17] as moot because the court already denied confirmation of that plan.

Dated: 3/15/2018

/s/ Brian T. Fenimore
HONORABLE BRIAN T. FENIMORE
United States Bankruptcy Judge